## STATE *vs.* THOMAS J. FITZSIMMONS.

1.  ELECTIONS—MUNICIPAL ELECTIONS—VALIDITY.

Under 19 *Del. Laws*, *c.* 727, § 11, providing that voters at a municipal election must have registered for the next preceding general election, a city election is not invalid because the officers holding it did not have in their possession the books showing who were registered for the preceding general election; it being presumed, in the absence of evidence to the contrary, that the voters thereat were qualified.

2.  ELECTIONS—IMPERSONATION OF VOTERS.

Impersonation of voters at an election was an offense at common law• and hence is indictable in this state, although not covered by statute.

3.  ELECTIONS—IMPERSONATION OF VOTERS—DEFENSES.

It is not a defense to a prosecution for impersonating, at a city election, a voter duly registered at the next preceding general election, that such voter had become disqualified by removal from the election district.

4.  CRIMINAL LAW—CONFLICTING EVIDENCE—DUTY OF JURY.

It is the duty of the jury to reconcile conflicting evidence whenever possible; but, if it cannot be reconciled and made consistent, they should be governed by the testimony which they believe to be most entitled to credit and belief.

5.  CRIMINAL LAW—"REASONABLE DOUBT".

The "reasonable doubt" which will justify a verdict of not guilty must be such a doubt as reasonable, fair-minded, and conscientious men would entertain after a careful consideration of all the evidence, and not merely a fanciful or speculative doubt.

*(January* 31, 1912.)

PENNEWILL, C. J., and WOOLLEY, J., sitting.

*Andrew C. Gray*, Attorney General, and *Josiah O. Wolcott*, Deputy Attorney General, for the state.

*Robert G. Harman* for the defendant.

Court of General Sessions, New Castle County, January Term, 1912.

INDICTMENT (No. 62, September Term, 1911) for impersonation of voters at the Municipal Election.

The facts and questions presented appear in the charge of the court.   See same case (2 *Boyce*, 541, and 82 *Atl.* 223) on motion to quash indictment on the grounds (1) that the law relating to impersonation of voters applies only to general elections, and (2) that no valid city election was held in June, 1911.

### DEFENDANT'S PRAYERS.

Unless the jury is satisfied beyond a reasonable doubt that the defendant is guilty of the offence charged, the jury should acquit him.

The municipal election held in the City of Wilmington on the first Saturday in June, A. D. one thousand nine hundred and eleven, was an illegal election.

The municipal election held in the City of Wilmington on the first Saturday in June, A. D. one thousand nine hundred and eleven was an illegal election, because neither the "Register", nor the "Book of Registered Voters", as provided for by law, was used at said election.   The proof is, that both of said books were kept in the office of the Clerk of the Peace all of the day, and that the election officers did not make any effort directly or indirectly to ascertain whether Hunter or Fitszimmons, or any other person had any right to vote at said election by recourse to said books.

There is no law relating to the subject of impersonation of voters in regard to municipal elections held in the City of Wilmington.

The indictment charged Fitzsimmons voted on Hunter's name, who it was charged had a *prima facie* right to vote at the said city election.   When the indictment was drawn, and long before that time Hunter did not have a *prima facie* right to vote at the city election.   He had no right at all to vote at said city election, because he did not live in the election district at the time of the city election.   The evidence, therefore, does not support

the indictment, and the indictment must be strictly proven as charged.

Provisions of the statutes relied upon were *Volume* 21, *Delaware Laws, pages* 84, 114, 118, 132, § 9, 18, 19 and 29; 19 *Delaware Laws* 984, § 2; 24 *Delaware Laws* 355, § 17; and 21 *Delaware Laws* 89, § 27.

And it was contended that it clearly appears from the statutes

That express provision is made for the original "Register" and "Book of Registered Voters" to be used

    (a) at all General elections,

    (b) at all Special elections, and

    (c) at all *Municipal* elections.

That no one can vote at any General, Special or Municipal election, unless

    (a) His name appears upon the "Book of Registered Voters"; and

    (b) after the vote is accepted one of the judges must write the word *"voted"* after the elector's name in the *"Book of Registered Voters"*.

That provision is expressly made for the *delivery* of the "Register" and the "Book of Registered Voters" to the election officers

    (a) at all General elections,

    (b) at all Special elections, but *not*

    (c) at Municipal elections.

As to municipal elections it is a case of *casus omissus*, as to the *delivery* of the books to the election officers, but the law is plain that the "Register" and "Book of Registered Voters"

    (a) Shall be *used* at Municipal elections.

    (b) That no one can vote unless his name appears upon the "Book of Registered Voters", and

    (c) That when the vote is taken one of the judges must write the word *"voted"* opposite the name of the elector in the "Book of Registered Voters".

After the election is over provision is made for the delivery of the said "Register" and the "Book of Registered Voters" to the officer named by law.

In this case at the last municipal election

    (a) "The Register" was not used at all (by copy or other-
        wise).

    (b) The original "Book of Registered Voters" was not used.
The election, therefore, was held in violation of law and is void.

PENNEWILL, C. J., charging the jury:

Gentlemen of the jury:—It is charged in this indictment "that Thomas J. Fitzsimmons," the defendant, "late of Wilmington Hundred in the county aforesaid, on the third day of June in the year of our Lord one thousand nine hundred and eleven, with force and arms at Wilmington Hundred in the county aforesaid, did at the municipal election held in the City of Wilmington, county and state aforesaid, on the said third day of June, at which election votes were given for municipal officers of the said City of Wilmington as by law provided, falsely personate and falsely represent himself to be one Coleman Hunter, he the said Coleman Hunter having theretofore properly caused his own proper name to be entered in the book of registered voters in the fifth election district of the fourth ward in said city, and he the said Coleman Hunter then and there and thereby being *prima facie* entitled to cast a vote at said municipal election in the said election district; and the said Thomas J. Fitzsimmons then and there offered himself at the polling place in said election district for the purpose of voting thereat at said municipal election, and did then and there vote, falsely representing and pretending to the election officers in said election district that he the said Thomas J. Fitzsimmons was then and there the Coleman Hunter whose name so appeared on the book of registered voters as aforesaid, whereas in truth and in fact the said Thomas J. Fitzsimmons was not the person whose name so appeared on said book of registered voters as Coleman Hunter as aforesaid, by reason of which said false representation and false personation by the said Thomas J. Fitzsimmons the said election officers were induced to receive and accept and did receive and accept the vote of him the said Thomas J. Fitzsimmons in said election district at the said municipal election for and as the vote of the said Coleman Hunter," etc.

The only question of fact you are to determine is whether the defendant did at the said election cast a vote falsely representing and pretending to the election officers in said district that he, the defendant, was Coleman Hunter whose name appeared on the book of registered voters as aforesaid, whereas in truth and fact he was not such person.

In other words the question is, did the defendant falsely personate Coleman Hunter at said election and vote in his name?

The state claims that he did. The defendant insists that he did not, and in fact contends that he did not vote at all at the election district at which he is alleged to have personated Coleman Hunter.

The law of this state does not provide for a registration of voters for municipal or city elections, but it does provide the registration qualification of voters at said election.

*Section* 11, *Chapter* 727, *Volume* 19, *Laws of Delaware* provides:

"That (at) all municipal elections every male citizen of the age of twenty-one years and upwards having resided within the said city for three months next previous to the election, and in the election district where he offers to vote for thirty days next preceding the election, who being otherwise qualified to vote at all state elections, and who shall have registered at the registration for the general election next prior to the election at which he offers to vote, and who shall have voted thereat, as shown by the registration books of the inspectors of that election, or who shall have registered at a revision of such registration and no other, shall be entitled to vote," etc.

There is no law that provides for the delivery of such books at any time to the department of elections of the city, or to the election officers, to be used at a municipal election.

Unquestionably the law means that no one shall vote at a municipal election in the City of Wilmington who did not register at the registration for the next preceding general election.

[1] But the law does not mean that there cannot be a legal and valid city election held unless the officers who hold such election, and ascertain the qualification of the voters, have in their possession the registration books showing who was registered for

the next preceding general election, and we cannot hold that the election held in the city on June 3, 1911, was invalid on that ground.

It is not shown, or pretended, that the voters at said election were not registered as required by law.   Indeed it is not disputed that Coleman Hunter was so registered.   In the absence of proof showing that the voters were not legally qualified, we cannot assume that they were not.   We will rather assume, in the absence of evidence to the contrary, that at an election held under color of law the voters were qualified.

[2]   Even if there is no law in this state relating to the "impersonation of voters", it was nevertheless an offense at the common law, and is therefore an indictable offense under the law of this state.

[3]   The indictment in this case charges that Coleman Hunter was at the time of the said city election "*prima facie* entitled to cast a vote in the said election district."   Notwithstanding the fact that his name appears as a qualified voter in the registration books for the next preceding general election, it now appears by evidence produced at the trial that the said Hunter was not at the time the election was held, and at the time the indictment was drawn, a resident of said district, and the defendant insists, because of that fact, the evidence does not support the indictment, and it cannot be sustained.

It is a fact not controverted that Coleman Hunter was duly registered at the general election next preceding the city election, and was thereby *prima facie* qualified to vote.   Even if the registration books had been before the election officers at the time of the city election, there could have been no way of showing his disqualification except by challenging his right to vote for cause recognized by the law.   His right to vote was not challenged, and he was *prima facie* entitled to cast his vote at that time.

Such being the case we think the averment in the indictment is sustained so far as Coleman Hunter's *prima facie* right to vote is concerned, and the fact that he had become disqualified by removal from the district, which was not known to the officers, did not take away such *prima facie* right, existing at the time,

within the meaning of the law, or exempt him from the operation of the statute.

[4] We say to you that in every case where the evidence is conflicting, as it is in this case, it is the duty of the jury to reconcile that conflict if they can, and make the evidence consistent; and if they cannot reconcile it, and make it consistent, it is the duty of the jury to be governed by that testimony which they believe from all the facts and circumstances disclosed by the evidence is most entitled to their credit and belief. If you believe from the evidence that Coleman Hunter was duly registered at the general election next preceding the city election, and that the defendant voted on Hunter's name as charged in the indictment, your verdict should be guilty.

[5] If you do not so believe, or if you entertain a reasonable doubt that he did vote upon the name of Hunter, your verdict should be not guilty. Of course you understand that such a doubt must be a reasonable doubt; it must not be a mere fanciful or speculative doubt, but a real doubt growing out of the evidence, and such a doubt as reasonable fair-minded and conscientious men would entertain after a careful consideration of all the evidence.            Verdict, not guilty.